**Tamara K. NERBY, Relator,**

v.

**TALENT PARTNERS, Department of Economic Security, Respondents.**

No. C7–94–99.

Court of Appeals of Minnesota.

June 28, 1994.

Tamara K. Nerby, pro se.

Talent Partners, pro se.

Kent E. Todd, Dept. of Economic Sec., St. Paul, for Dept. of Economic Sec.

Considered and decided by SHORT, P.J., and KLAPHAKE and HOLTON,* JJ.

## OPINION

SHORT, Judge.

By writ of certiorari, Tamara K. Nerby appeals an agency determination that she is not eligible to receive unemployment compensation benefits. We are asked to decide whether an actor collecting fees for the rebroadcast of commercials is performing work within the meaning of Minn.Stat. § 268.07, subd. 2(a)(4) (1992).

## FACTS

Nerby is a television and radio artist. During 1992, she worked for three agencies in the production of television and radio commercials. Nerby received pay (session fees) for performing in the commercials, and she also received pay (reuse fees) if the commercials were later re-run. Nerby did not perform additional services for the reuse fees, but she was contractually restricted from appearing for competitive products during the period covered by the reuse fees.

Nerby filed a claim for unemployment compensation benefits in May of 1993. During her base period, calendar year 1992, Nerby received session fees in nine weeks and reuse fees in at least an additional six weeks. At each stage in the administrative process,

the agency denied Nerby's claim for failure to perform services for wages in fifteen calendar weeks as required by Minn.Stat. § 268.07, subd. 2(a)(4) (1992).

## ISSUE

Is a person collecting fees for the reuse of commercial spots performing work for purposes of establishing eligibility for unemployment benefits?

## ANALYSIS

■ Our standard of review in unemployment cases is relatively narrow. The Commissioner's fact findings are to be viewed in the light most favorable to the decision and will not be disturbed if there is evidence that reasonably tends to support them. *Markel v. City of Circle Pines,* 479 N.W.2d 382, 383 (Minn.1992); *McGowan v. Executive Express Transp. Enter. Inc.,* 420 N.W.2d 592, 594 (Minn.1988). While we are not bound by the Commissioner's conclusions of law, an agency's interpretation of the statute it administers will be upheld unless it conflicts with the express purpose or legislative intent of the statute. *Geo. A. Hormel & Co. v. Asper,* 428 N.W.2d 47, 50 (Minn.1988).

■ To establish a right to unemployment benefits, a claimant must have:

(1) wage credits in two or more calendar quarters of [her] base period;

(2) minimum total base period wage credits equal to the high quarter wages multiplied by 1.25;

(3) high quarter wage credits of not less than $1,000; and

(4) performed work in 15 or more calendar weeks in the base period.

Minn.Stat. § 268.07, subd. 2(a) (1992). The Commissioner found that Nerby's 1992 wages met the first three requirements, but denied Nerby's claim because (1) Nerby was not performing services during the weeks in which her commercials were aired, and (2) reuse fees are not wages. We conclude that the agency's interpretation of the unemployment statute to require a claimant to perform services for wages in fifteen or more calendar weeks is consistent with the statute and its legislative history.

■ The purpose of the unemployment compensation system is to ease the economic harm individuals suffer when they are unemployed through no fault of their own. Minn. Stat. § 268.03 (1992). Only people "genuinely attached to the labor market" are covered by the statute. *Hansen v. Continental Can Co.,* 301 Minn. 185, 187, 221 N.W.2d 670, 672 (1974). Qualifying wage and employment provisions are intended to measure an individual's attachment to the labor market. U.S. Dep't of Labor, Comparison of State Unemployment Insurance Laws 3–3 (Sept. 1987 revision); *see Sorensen v. Meyer,* 220 Neb. 457, 370 N.W.2d 173, 179 (1985) (monetary eligibility requirements ensure that claimant is willing to work).

The eligibility requirements in the Minnesota unemployment statute are modeled after Oregon's unemployment statute, which requires both a minimum level of wages and a minimum number of "weeks of work in subject employment." *Senate Floor Debate on S.F. No. 1161* (May 13, 1987); Or.Rev.Stat. § 657.150 (1987). Subdivision 2(a)(4) was added to Minn.Stat. § 268.07 to ensure recipients have a minimum number of "weeks worked" in addition to wages earned. *Senate Floor Debate on S.F. No. 1161* (May 13, 1987). The statute requires a claimant to earn wages in at least 15 calendar weeks, as opposed to simply perform work of any kind.

■ The Commissioner's decision to deny Nerby's claim for unemployment benefits was based on a finding that she earned wages in only nine weeks in 1992. This finding is not clearly erroneous. Wages are remuneration for services. Minn.Stat. § 268.04, subd. 25 (1992). It is undisputed that Nerby performed services for wages in nine weeks in 1992. We affirm the Commissioner's findings because Nerby *(a)* was paid session fees for the services she performed, *(b)* performed no new services in exchange for the reuse fees, *(c)* was free to make commercials except for a competitive product during the time she received reuse fees, and *(d)* did not make commercials in the weeks during which she received only reuse fees.

In deciding that Nerby was not earning wages while collecting reuse fees, the Commissioner relied on Minnesota Rule 3315.0220(I) (1991). This rule exempts the following income from wages:

> remuneration paid to radio and television artists which represents residual payments and which is accrued subsequent to the production of musical jingles, spot announcements, radio transcriptions, and film sound tracks.

Nerby argues this rule is limited to residuals paid for the production of voice spots and does not apply when an actor's image is captured on a visual medium. We do not read rule 3315.0220(I) so narrowly. The Commissioner found that reuse fees are residual payments which do not qualify as wages. This finding is supported by the record and the rule, and is consistent with the unemployment statute. We defer to the agency's interpretation of its rule and statute. *Geo. A. Hormel & Co.*, 428 N.W.2d at 50.

We conclude the Commissioner's decision to count only weeks in which Nerby received payment for making commercials is consistent with the purpose and history of the unemployment statute. Recipients of unemployment benefits must have been active in the labor force in at least fifteen weeks during their base period. Nerby was part of the labor force in only nine weeks in 1992. *See In re Price's Claim*, 9 A.D.2d 561, 189 N.Y.S.2d 464, 465 (1959) (weeks during which actress was paid reuse fees do not contribute to her eligibility for benefits). Therefore, the Commissioner's finding that Nerby was ineligible for unemployment compensation benefits is not clearly erroneous.

## DECISION

Nerby was not performing work within the meaning of Minn.Stat. § 268.07, subd. 2(a)(4) (1992), while she collected residuals for the reuse of her taped performances.

**Affirmed.**